# EXHIBIT 1

# Amended Herbolsheimer Declaration

# EXHIBIT 1

# Amended Herbolsheimer Declaration

**AMENDED DECLARATION OF ALICE K. HERBOLSHEIMER, ESQ.
IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE
TO FILE FIRST AMENDED COMPLAINT**

I, ALICE K. HERBOLSHEIMER, ESQ., declare:

1. I am a Deputy Reno City Attorney, and I am duly licensed to practice law in all federal and state courts in the State of Nevada.

2. I am over the age of eighteen (18) and am competent to testify to the matters set forth in this Declaration and will do so if called upon to testify.

3. I represent Defendant Reno Police Officer Richard Jager in this matter, and I make this Declaration in Opposition to Plaintiff's Motion for Leave to File First Amended Complaint (ECF No. 45).

4. The article published by Bob Conrad on January 27, 2026 contains information that was disclosed to Plaintiff's counsel in response to Plaintiff's discovery.

5. Specifically, Conrad's article states "She [in reference to Reno city prosecutor Jill Drake] allegedly wrote emails calling Killinger's then-attorney "cocky" and "would 'love' to find a way to prove the case against Killinger…"

6. The email to which Conrad referred was one of the documents that I had provided to Plaintiff's counsel shortly before Officer Jager's deposition. I did not provide this document to Bob Conrad or any third party not involved in this lawsuit.

7. After reviewing Conrad's January 27, 2026 article, I reviewed Plaintiff's Motion for Leave to File First Amended Complaint and supporting exhibits to see if there was any reference to Jill Drake's email. When I did not see any reference to the email, I used the search function on Adobe Acrobat to search for the term "cocky" in Plaintiff's filings to double check that I had not missed it. The search did not yield any results, which led me to believe that the term does not appear in any of documents.

8. Conrad's article led me to suspect that Plaintiff's counsel may have had direct communications regarding this case, and I was concerned about potential violations of NRPC 3.6.

9. I am concerned about the negative publicity that has been generated by this case because Officer Jager has received threats and harassment directed at him and his family since the filing of this lawsuit. He has provided me with a sample of some of the harassing text messages from anonymous actors, which are vulgar and highly disturbing.

10. I personally advised Plaintiff's counsel of the harassment via email on January 14, 2026, prior to Officer Jager's deposition.

11. After reading Bob Conrad's article on January 27, I raised my concerns about possible communications between Conrad and Plaintiff's counsel and asked her point blank whether any communications had occurred.

12. Ms. Keyser-Cooper appeared upset and offended by my inquiry and accused me of getting "personal and nasty" and "attacking" her.

13. Ms. Keyser-Cooper told me, "there is nothing wrong with telling a journalist who calls that there have been new pleadings filed in the case."

14. Ms. Keyser-Cooper also told me, "Mr. Conrad called me to tell me he had talked to someone at DMV who told him there is no record of DMV employees having hookups with criminals to manufacture false driver's licenses. I asked him for the name of the person he spoke with at DMV. He refused to provide it. That is what I remember about our conversation. He seems to be highly interested in the case…"

15. I had a difficult time comprehending why Mr. Conrad would conduct independent investigation in support of Plaintiff's allegations (which are irrelevant to the trespass claim) and then report it to Plaintiff's counsel. So, I pressed Ms. Keyser-Cooper for additional details about their conversation. She responded that she had no idea why Conrad sent her an email "out of the blue" and then followed up with a call to her.

16. Ms. Keyser-Cooper also told me, "Conrad called me many times over the Killinger case when I was in Istanbul in November. I don't talk to anyone when I am on vacation."

17. I have asked Ms. Keyser-Cooper to provide a written response to me regarding the nature and extent of any communications she has had with Bob Conrad and/or any other media or

news organization. To date, Ms. Keyser-Cooper has only offered to send me the email that Conrad sent to her about the DMV.

18. The parties engaged in unsuccessful settlement negotiations during a settlement conference on November 20, 2025. Ever since our failed settlement conference, Ms. Keyser-Cooper has continued to repeatedly urge me to settle this case, even though I have advised her that I believe this case lacks merit, and we are prepared to defend this case through trial.

19. After the filing of Defendant's Opposition (ECF No. 50), it was brought to my attention that Jill Drake's email about Killinger's former attorney being "cocky" actually appears on Plaintiff's Proposed First Amended Complaint, which was attached as Exhibit 3 to Plaintiff's Motion. I simply missed it during my review of the lengthy document, and it was not picked up by Adobe's search function. I take full responsibility for this error and oversight.

20. Attached to the Opposition to Plaintiff's Motion for Leave to File First Amended Complaint are true and correct copies of the following documents:

Exhibit 1 – Declaration of Richard Jager

Exhibit 2 – Peppermill Barring Notice dated 3/26/2023

Exhibit 3 – Declaration of Jill Drake

Exhibit 4 – Excerpts of Office Jager's Deposition Transcript

Exhibit 5 – Excerpts of Chief Nance Deposition Transcript

Exhibit 6 – Bob Conrad Article 1-27-2026

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

Executed on this 20th day of February, 2026, in Reno, Washoe County, Nevada.

By _____
ALICE K. HERBOLSHEIMER, ESQ.
Nevada Bar No. 6389