TERRI KEYSER-COOPER
Law Office of Terri Keyser-Cooper
Nevada Bar No. 3984
125 Edgewater Parkway
Reno, NV 89519
(775) 337-0323
Keysercooper@lawyer.com
*Attorney for Plaintiff Jason Killinger*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JASON KILLINGER, | Case No. 3:25-cv-388-MMD-CSD |
| Plaintiff, | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO AMEND** |
| v. | |
| RENO POLICE OFFICER R. JAGER, | |
| Defendant. | |
| _____/ | |

**I.    DEFENDANT JAGER'S ADMISION OF LIABILITY, APOLOGY TO PLAINTIFF, AND CONFESSION OF TAKING A COMPLETELY INNOCENT MAN TO JAIL NECESSITATED THE NEED TO FILE THIS MOTION TO AMEND**

At his deposition on January 22, 2026, Defendant Jager ("Jager') dramatically changed the posture of this case by admitting he took a "completely innocent man to jail," a Fourth Amendment violation. His about face necessitated the filing of this motion to amend. Before his deposition Jager contended Plaintiff Killinger's ("Killinger") arrest was based on probable cause. However, at his deposition, Jager conceded he had made a mistake, he had received RPD facial recognition software training ("FRS"), and now knew that he arrested Killinger without probable cause. With Jager's stunning admission, a Fourth Amendment claim was required. Jager based his reversal on his lack of training—and with subsequent training he knew Killinger's arrest to lack probable cause. This prompted the need to add a claim for municipal liability based on failure to train. Jager testified:

**Q**:    Mr. Killinger went to jail when he should not have gone to jail; isn't that true?

1

| | | |
|---|---|---|
| A: | Based on hindsight and the information I have now, **yes.** | |
| Q: | Are you sorry about it? | |
| A: | **Yes** | |
| Q: | Are you sorry enough to extend an apology to Mr. Killinger right now? | |
| A: | **Yes, I would. Absolutely.** (Exh. 6, Jager, 23:21-25; 24:1-20) | |

\*

| | |
|---|---|
| Q: | And as you sit here now, you took a completely innocent man to jail, a man who violated no law, and was wrongfully arrested, correct? |
| A: | **Based on the information I have now, yes. (**Exh. 6, Jager, 42:3-9 |

Jager testified Killinger should never have been taken to jail. (Exh. 6, Jager, 44:5-9). Jager testified since his FRS training after Killinger's arrest, he now knows FRS is not probable cause for an arrest. (Jager, 16:13-22) Jager admitted he now knew, that FRS is "nowhere near sufficient for probable cause for an arrest." (Exh. 6, Jager, 60:10-18). Jager testified Killinger's arrest was based "solely on FRS" and in the future he would not make such arrests "without further corroboration." (Exh. 6, Jager, 60:19-23) Jager admitted, "Looking like some who's committed a crime [via FRS] is not grounds for an arrest." (Exh. 6, Jager, 60:24-25; 61:1-3)

## II.     PLAINTIFF MEETS HIS BURDEN FOR THE GRANTING OF HIS MOTION

Fed. R. Civ. P. 15(a)(2) instructs courts to "freely give leave [to amend] when justice so requires." *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 871 (9th Cir. 2016). "This policy is to be applied with **extreme liberality**." *C.F. v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 (9th Cir. 2011) (Emp. added). Absent prejudice, the court may decline to grant leave to amend **only** where there is a **strong** showing of: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, or (5) futility of amendment. *Sonoma Cty. Ass 'n of Retired Employees v. Sonoma Cty.,* 708 F.3d 1109, 1117 (9th Cir. 2013). "Absent prejudice, or a strong showing of the other factors, there exists a presumption under Rule 15(a) in

2

favor of granting leave to amend." *Forman v. Davis,* 371 U.S 178, 83 S.Ct. 227 (1962).

### A. **Defendant Fails to Show Prejudice**

Defendant fails to reference any prejudice he will suffer as a result of granting this this Motion to Amend. Defendant's brief shows not a single reference to a showing of prejudice.

### B. **Defendant Fails To Show Undue Delay**

Plaintiff filed his Motion to Amend on January 25, 2026, **three days after** Jager's January 22, 2026 deposition. At his deposition, Jager surprisingly admitted Killinger's arrest was wrongful. Jager testified he had attended an RPD training on FRS in 2025, two years after Killinger's arrest, and learned for the first time arrests cannot be made based on FRS alone. Jager testified prior to the new FRS training, he had always believed FRS alone was probable cause to arrest.

Jager argued for months, in all his pleadings, that FRS **was probable cause** for arrest and was reasonable. Jager admitted that after the training it was clear to him FRS was **not probable cause** for arrest. Plaintiff's counsel received the training materials on January 12, 2026, before Jager's deposition in Jager's First Supplemental Disclosures. (Exh. 5, p. 4, lines 21-22). The training plainly stated:

- Facial Recognition=Investigative Tool, ***NOT PROOF***
- Does Not Establish Identity
- Must Be Corroborated Before Any Action Is Taken (Exh. 2, Jager 104)

\*

- Facial Recognition Alone Is ***NOT PROBABLE CAUSE***
- Courts expect corroboration
- Treat as an Investigative Lead Only (Exh. 2, Jager 113)

A review of the RPD training revealed Jager's arrest of Killinger was without probable cause. Jager's sole reason to arrest Killinger was the Peppermill's inaccurate FRS. (Exh. 1). At Jager's deposition, Killinger was alerted for the first time that Jager now admitted his arrest was unlawful. Within three days of Jager's deposition, Killinger filed his motion to amend.[1]

### C. **Defendant Fails To Show Bad Faith**

---

[1] The deadline for amending pleadings is **April 7, 2026**. The motion to amend was filed on **January 25, 2026,** well within the discovery guidelines.

3

Understandably is a disaster for defense counsel in a police misconduct case to hear her police client testify to making an arrest without probable cause. But that does not mean defense counsel must resort to false accusations of bad faith and accuse her opposition of misconduct.

**First,** Ms. Herbolsheimer alleges Ms. Keyser-Cooper is in bad faith because in an earlier filing Ms. Keyser-Cooper asserted the case was not about probable cause for an arrest. According to Ms. Herbolsheimer it is "bad faith" for Ms. Keyser-Cooper now allege that it is about probable cause for an arrest. This is absurd on its face given that Ms. Herbolsheimer **withheld Jager's training records,** making it impossible for Ms. Keyser-Cooper to know that RPD now specifically trains its officers not to do exactly what Jager admits to doing—making arrests based solely on FRS. This new information was not available to Ms. Keyser-Cooper when she originally filed Killinger's complaint. It would be malpractice for Ms. Keyser-Cooper not to add a claim for wrongful arrest when Jager now admits Killinger's arrest was wrongful and lacked probable cause.

**Second,** Ms. Herbolsheimer falsely asserts that Ms. Keyser-Cooper "demanded" an apology from Jager for his admittedly wrongful arrest of Killinger on the basis that such an apology is "not relevant." She also claims that the "demand" for an apology was made to embarrass Jager and to publicize the apology "knowing" that a certain journalist, Bob Conrad, would likely report on it. This is preposterous. Ms. Keyser-Cooper does not know Mr. Conrad and has no relationship with Mr. Conrad. She had no way of knowing what articles Mr. Conrad would write. As for "demanding" Jager apologize, that too is false. Jager admitted at his deposition, voluntarily, that he had taken a completely innocent man to jail. He sounded repentant and sorry. Ms. Keyser-Cooper "asked him" not "demanded of him" if he was "willing to apologize" and he immediately agreed and said, "absolutely." (Exh. 6, Jager, 23:21-25; 24:1-20; Exh. 10, Supplemental Decl. of counsel).

**Third,** Ms. Herbolsheimer falsely alleges that Ms. Keyser-Cooper communicated to Mr. Conrad information that was not in the public record in violation of the ethics rules regarding trial publicity, NRCP 3.6. Ms. Herbolsheimer's false allegation against Ms. Keyser-Cooper was so extreme, spiteful, and malicious that she requested this Court refer the matter to the **state bar** to discipline Ms. Keyser-Cooper. (Def. Br., ECF No. 50, 19:20-33). Ms. Herbolsheimer has since

4

recanted this, admitted she was in error, admitted everything Mr. Conrad wrote was actually in the public record, and issued an Errata explaining her error. (ECF No. 51, 1:25-28; 2:1-14). Accordingly, there is no issue of Ms. Keyser-Cooper engaging in bad faith.

### III. IMPORTANCE OF AMENDING THE COMPLAINT AS TO DEFENDANT JAGER

"An arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." *McKenzie v. Lamb,* 738 F.2d 1005, 1007 (9th Cir. 1984). It is a per se constitutional violation. Jager admitted to wrongly arresting Killinger without probable cause.

Jager's wrongful arrest of Killinger was not a mistake of fact or of law. It was a mistake caused by City of Reno's ("City") failure to train its police employees on what police officers know everywhere else, that arrests based solely on FRS cannot furnish probable cause to arrest. Expert police witness Scott DeFoe will testify that it has been **widely known for years in the police industry**, long before Jager's arrest of Killinger, that FRS can be inaccurate and FRS is only a tool, a starting point for an investigation, and under no circumstances can be used to make arrests.

Reno City Attorney Jill Drake, tasked with prosecuting Killinger, testified she has "**always**" known that FRS can be "inaccurate." (Exh. 7, Drake, 21:21-25). RPD Police Chief Nance agreed, admitting to knowing FRS can be "inaccurate." (Exh. 8, Nance, 26:13-15; 31:10-11). Nance testified she was "unaware of any training given on facial recognition" to RPD officers. (Exh. 8, Nance, 13:2-5). Nance appeared indifferent as to whether RPD officers should receive training on FRS. She testified that FRS training on arrests based solely on FRS was not "essential" for officers and need not be "required" for all officers. (Exh. 8, Nance, 17:9-12; 18:9-20).

#### A. What Matters Is The Objective Effect of the Officer's Actions

Jager argues his wrongful arrest of Killinger was based on ignorance, he did not know that arrests based on FRS alone were not grounds for probable cause until his RPD training two years after his arrest of Killinger. "The subjective intent of the law enforcement officer is irrelevant in

5

determining whether that officer's actions violate the Fourth Amendment…; the issue is not his state of mind, but the objective effect of his actions." *Brigham City v. Stuart,* 547 U.S. 398, 405 (2006). Jager testified he had been taking trespassers to jail from the Peppermill based on their FRS for years." (Exh. 6, Jager, 100:5-9)  By his own admission, Jager has made hundreds of arrests based on FRS. (Exh. 9, Jager Decl., p. 2, ¶11). It matters not whether Jager was ignorant, harbored animus, or made a mistake. What matters is the "objective effect" of what Jagger did. The importance of this case is that this conduct, admitted to by Jager, involves a pattern and practice of arrests made over years without probable cause. For this reason, justice requires that Killinger must be permitted to amend his complaint and add a wrongful arrest claim against Jager.

### B.  IMPORTANCE OF AMENDING THE COMPLAINT AS TO CITY OF RENO

"Failure to train may constitute a basis for *Monell* liability where the failure amounts to deliberate indifference to the rights of those who deal with the municipal employees." *Benavidez, v. Cnty of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021). "To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Id.* at 1153-54.

### 1.  Justice Requires That A Municipal Claim Against City Be Added

Jager admitted that Killinger was arrested without probable cause, that by itself is a constitutional violation. But Jager testified that what occurred with Killinger was also not just his standard operating procedure but the policy and practice of all RPD officers--arresting persons based on FRS matches without corroboration. (Exh. 6, Jager, 17:16-22). Jager testified that what he had done with Killinger was a **common** custom and practice and he had been doing it for years:

In the years prior to September 17, 2023, I had responded to numerous trespass calls

6

from the Peppermill, ranging anywhere from two to six calls per week. It was a very **common occurrence**, and in most instances, the suspect would claim they were not the person identified by Peppermill's facial recognition software. (Exh. 9, Jager Decl., p. 2, ¶11).

Jager confessed to making up to 200 arrests based solely on FRS. He testified it would have been "helpful" to him to have had the FRS training before he wrongfully arrested Killinger. He testified he would **not** have made the arrest he made had he had such training. (Exh. 6, Jager, 90:9-16). Jager's admission, coupled with Chief Nance's indifference to the necessity of training officers on FRS, is the cause in fact and the proximate cause of Killinger's constitutional injury.

### 2. Failure To Train Leads to Municipal Liability

Jager testified "everything he did on the night he interacted with Killinger was the "custom and policy of RPD." He believed he was "following RPD policy at the time and RPD custom and practice." (Exh. 6, Jager, 8:8-12; 71:12-18). He understood other officers were doing the "same thing." (Exh. 6, Jager, 18:22-25; 19:1-9). Granting leave to amend to add City as a party will allow this case to proceed on the merits. It will serve the public goal of achieving police accountability. It will restoring the public trust by ensuring police officers make arrests based on probable cause. It will prevent the tragedy of what occurred to Killinger from happening to others.

### 3. Injunction Mandating All RPD Officers Receive FRS Training

Should this Motion to Amend be granted to allow City to become a new party, Killinger will seek injunctive relief requiring RPD to train all its officers that FRS is not probable cause to arrest and is not proof of identity. Hopefully this will have the effect of preventing future wrongful arrests.

### IV.   QUALIFIED IMMUNITY

City does not have qualified immunity. A municipal liability claim is not subject to qualified immunity. *Owen v. City of Independence, Mississippi*, 445 U.S. 622, 638. (1980).

Qualified immunity consists of two prongs: whether the defendant's conduct violated a

7

constitutional right, and whether the right it was clearly established at the time of the violation." *Polanco v. Diaz*, 76 F.4th, 918, 925 (9th Cir. 2023). As to the first prong, Jager testified he lacked probable cause to arrest Plaintiff. An arrest without probable cause meets the first prong of the qualified immunity test. *Rosembaum v. Washoe County,* 663 F.3d 1071, 1076 (9th Cir. 2011). As to the second prong, whether it was clearly established that FRS could not provide probable cause for arrest, Jager's claimed ignorance that "he did not know" arrests could not be made based solely on FRS fails as it was widely known in the police industry that arrests based solely on FRS lack probable cause. Defense counsel states she has "conducted extensive research" and cannot find a "single" case addressing the issue therefore such an arrest cannot have been clearly established. (Def. Br. 13:24-26; 14:1-5). The issue is not whether the law books contain a relevant case, **the issue is whether it was clearly established that police officers knew that arrests based solely on FRS were not probable cause for an arrest at the time of the arrest.**

Nationally known police expert Scott DeFoe will testify that it was clearly established in 2023, at the time of Killinger's arrest, that arrests based solely on FRS cannot establish probable cause. Jager should have known that. All RPD officers should have known that. All reasonable officers everywhere know that FRS is not probable cause for an arrest but only a tool as part of the investigative process. Officers cannot make unlawful arrests, cause constitutional injuries simply because they have not been adequately trained. There is no reprieve for stupidity. RPD cannot escape liability because it has been deliberately indifferent to teaching its officers what reasonable police officers everywhere already know. Chief Nance expressed the essence of deliberate indifference, admitting to knowledge that FRS can be inaccurate but testifying the training was not essential and should not be required for all RPD officers. (Exh. 8, Nance, 26:13-15; 31:10-11).

V.     **RELATION BACK PERMITS ADDING A NEW CLAIM AGAINST JAGER**

8

An amended complaint "relates back" to the date of the action was commenced. Thus, if the original complaint was timely filed, expiration of the statute of limitations at the time of the amendment is no bar to adding a new claim against an existing defendant. *Valadez-Lopez v. Chertoff,* 656 F.3d 851, 857-858 (9th Cir. 2011). Killinger's complaint was timely filed.[2] Relation back is permitted if the newly asserted claim arises out of the conduct, transaction or occurrence alleged in the original pleading. FRCP 15(c)(1)(A). *Saxton v. ACF Industries, Inc.* 254 F.3d 959, 962-62 (11th Cir. 2001). The only requirement is whatever theory is pleaded in the amended complaint must arise out of the same conduct and transaction as pleaded in the original complaint. *Martell Trilogy, Ltd.,* 872 F.2d 322. 325 (9th Cir. 1989); *Mayle v. Felix,* 545 U.S. 644, 656 (2005).

The relation back doctrine is liberally applied. An amended complaint is not time-barred because it asserts a new theory. The basic inquiry is whether the opposing party was on notice of the nature of the claim raised by the amended pleading. *Hall v. Spencer County, Ky*., 583 F.3d 930, 934 (6th Cir. 2009). Filing a lawsuit "warns the defendant to collect and preserve his evidence in reference to…the whole transaction described in it…" thus, defendant is aware that claims regarding that transaction may be amended and that the form of relief and law relied upon are not confined to their original statement. *Martell v. Trilogy, Ltd,* 872 F.2d at 325. The factual allegations contained in Killinger's original complaint and in his amended complaint are virtually identical, explaining in detail exactly what Jager did, what happened, and why the actions were wrongful.

VI.   **RELATION BACK PERMITS ADDING NEW CLAIM AGAINST CITY OF RENO**

FRCP 15(c)(1)(C) relates back as to a newly added defendant. There are three requirements for adding a new defendant: (1) The claim must have arisen out of the conduct set forth in the original complaint. *Mayle v. Felix,* 545 U.S. 644, 656 (2005); (2) The new defendant must have received sufficient notice of the original action "within the period provided by Rule 4(m) (90 days)

---

[2] Killinger's claim arose on September 17, 2023 when he was arrested. There is a two year statute for such cases. He filed his complaint on July 30, 2025 (ECF. No. 1), well within the statute.

9

for serving of the summons and complaint;" and (3) The new defendant must have known or should have known that "but for a mistake concerning the proper party's identity," they would have been named in the original complaint. FRCP 15(c)(3). This permits a plaintiff to amend his complaint even after the statute of limitations has run. The purpose is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits. *Krupski v. Costa Crociere S.p.A.,* 560 U.S. 538 , 549-550 (2010).

### A. Knew or Should Have Known

"Relation back" as to a new defendant under FRCP 15(c)(1) is allowed only where the new defendant knew or should have known that "but for" plaintiff's mistake they would have been named in the original complaint. *Krupski,* 560 U.S. at 547. Here, Killinger was alerted to the mistake in failing to name City, when Jager surprisingly testified to engaging in wrongful arrests for years based on City's failure to train its officers. In *Krupski*, plaintiff Krupski brought an action for injuries suffered abord a cruise ship. She sued Costa Cruises who issued the ticket, but the owner and operator of the ship was Costa Crociere, a related corporate entity. Costa Crociere was aware of her mistake because it was represented by the same counsel as Costa Cruises. Plaintiff was permitted to amend her complaint after the statute of limitations had run to join "Costa Crociere" as the defendant because she had not timely been alerted of its role. *Krupski,* 560 U.S. at 554.

### B. Dilatory Conduct Does Not Prohibit the Adding of a New Claim Under Rule 15(c)

A plaintiff may know that a prospective defendant exists but nonetheless harbor a misunderstanding about his role in the events giving rise to the claim at issue. In such a case, the only question under FRCP 15(c)(1)(C) is whether the **prospective defendant knew or should have** known that, but for plaintiff's mistake, the action would have been brought against him. *Krupski,*

360 U.S. at 541. "Rule 15(c)(1)(C) asks what the prospective defendant knew or should have known during the Rule 4(m) period, **not what the plaintiff knew or should have known.**" *Id.* (Emp. added). In *Joseph v. Elan Motorsports Technologies Racing Corp.,* 638 F.3d 555, 560 (7th Cir. 2011), the Court allowed an amended filing after a 6-year delay:

> The only two inquiries that the district court is now permitted to make in deciding whether an amended complaint relates back to the date of the original one are, first, **whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff had it not been for a mistake**, would have sued him in addition to suing the named defendant; and second, whether even if so, the delay in the plaintiff's discovering his mistake impaired the new defendant's ability to defend himself.

### C. City's Notice Is Imputed Via "Shared Attorney" and "Identity of Interest"

City is not impaired in its ability to defend itself. City had notice of Killinger's lawsuit within the 90 requirement of Rule 4(m). The original complaint was filed July 30, 2025. (ECF No. 1). It was served on July 31, 2025. (Exh. 11). Reno City Attorney Karl Hall and Deputy Herbolsheimer appeared as "Counsel for Defendant" on August 21, 2025. (ECF No. 9). Mr. Hall's job description makes clear he is aware of all lawsuits filed against City and defends City in all legal matters.[3] Through Mr. Hall, City knew of the lawsuit. City had notice of the original complaint within 20 days of its service, well within the 90 day period by Rule 4(m).

Notice to City may also be imputed because City and Jager share the same attorneys, Mr. Hall and Ms. Herbolsheimer. *Singletary v. Penn. Dept. of Corr*, 266 F.3d. 186, 196 (3d Cir. 2001); *Schwartz v. Miller,* 153 F.4th 918, 933 (9th Cir. 2025). Notice is also imputed because there is an identity of interest between Jager and City—Jager is a City employee—he is paid by City, his paycheck comes from City funds. *Schiavone v. Fortune,* 477 U.S. 21, 29 (1986).

### VII. CONCLUSION AND APOLOGY

Killinger's proposed amended complaint is not barred by the statute of limitations because the relation-back doctrine applies. Relation back is allowed as long as the defendants are on notice,

---

[3] Karl Hall, as Reno City Attorney, is the "official" attorney for City. He serves as the legal adviser to the Mayor, City Council, defends the City in legal matters. (See Exh. 12, City of Reno internet description of City Attorney Hall's job duties)

11

which may be imputed when an attorney is shared or the parties have an identity of interest. Both conditions are satisfied here because City attorneys jointly represented Jager and City and because Jager and City share a close institutional relationship. *Schwartz v. Miller,* 153 F.4th at 933.

> In the absence of any apparent or declared reason—such as undue delay, bad faith, undue prejudice, or futility—the leave sought should, as the rules require, be give "freely given.' An outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules. *Foman v. Davis,* 371 U.S. 178 (1962).

Killinger worked diligently to amend his complaint immediately after learning Jager's arrest of Killinger was part of a much wider City problem. Jager confessed at his deposition to making the wrongful arrest because RPD failed to train him and because he believed it was the custom and practice of all RPD officers to such make arrests in precisely the manner he arrested Killinger. That custom and practice implicates City and possibly **hundreds** of arrests city officers have made based solely on FRS. Killinger rushed to amend his complaint within **three days** of Jager's deposition—immediately upon learning that Jager's actions were part of an ongoing policy and practice.

City will not be harmed by its inclusion in the action because City was on notice of the lawsuit within 20 days of its filing and knew or should have known it was a logical defendant. Notice is imputed to City by the sharing of attorneys and the identity of interests between Jager and City. Denying Killinger's motion to amend will not further justice, it will allow City to escape liability for what may be **hundreds of arrests** made based on FRS and without probable cause.

For all the above reasons, Killinger respectfully requests his Motion To Amend be granted, and Exhibit 3, the First Amended Complaint, be detached and filed to enable Killinger to obtain a Summons for City and to have City served with the First Amended Complaint.[4]

DATED: This 21st th day of February 2026.        /s/ Terri Keyser-Cooper
                                                 *Attorney for Plaintiff Killinger*

---

[4] Plaintiff's counsel apologizes to the court for her failure to read the Court's standing order regarding amendments. There was a rush to draft both the Motion for Leave to Amend and the First Amended Complaint. She will not make such an error again.

12

# **CERTIFICATE OF SERVICE**

I, Terri Keyser-Cooper, declare as follows:

On this date, February 21, 2026, I served a copy of the following documents on the parties as follows:

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO AMEND

[ ]   BY FED EX.  By placing a true copy of the above-referenced document(s) with FedEx in a sealed envelope with postage prepaid to the addressee(s) listed below.

[ ]   BY FACSIMILE TRANSMISSION.  By transmitting a true copy of the document(s) by facsimile transmission

[ ]   BY HAND-DELIVERY.  By delivering a true copy enclosed in a sealed envelope to the address(es) shown below.

[X]   BY ELECTRONIC SERVICE.  By electronically mailing a true copy of the document(s) to defendants at the following email addresses via the Court's electronic filing procedure:

KARL HALL
herbolsheimera@reno.gov
CateA@reno.gov
SparksJ@reno.gov@reno.gov

         /s/ Terri Keyser-Cooper
TERRI KEYSER-COOPER
*Attorney for Plaintiff Jason Killinger*