# EXHIBIT 2

# Declaration of Alice Herbolsheimer, Esq.

EXHIBIT 2

Declaration of Alice Herbolsheimer, Esq.

**DECLARATION OF ALICE K. HERBOLSHEIMER, ESQ. IN RESPONSE TO PLAINTIFF'S MOTION REGARDING DISCOVERY DISPUTE**

I, ALICE K. HERBOLSHEIMER, ESQ., declare:

1. I am a Reno Deputy City Attorney, and I am duly licensed to practice law in all federal and state courts in the State of Nevada.

2. I am over the age of eighteen (18) and am competent to testify to the matters set forth in this Declaration and will do so if called upon to testify.

3. I represent Defendants City of Reno and Reno Police Officer Richard Jager in this matter, and I make this Declaration in response to Plaintiff's Motion Regarding Discovery Dispute (ECF No. 82), filed on August 12, 2026.

4. On April 27, 2026, Plaintiff served his 7th Set of Requests for Production of Documents ("7th RFPs") on the City, containing requests for records pertaining to 168 separate trespass arrests made by the Reno Police Department ("RPD") between August 29, 2023 and December 25, 2024, of individuals who were identified using Peppermill's FRS.

5. Upon reviewing the RFPs, I determined that the requests were vague, ambiguous, overly broad, not relevant to the claims and defenses in the action and not proportional to the needs of the case. I immediately requested a meet-and-confer conference with Plaintiff's counsel, Terri Keyser-Cooper in an effort to obtain clarification of the discovery requests and to limit discovery to a reasonable scope.

6. A telephonic meet and confer conference was held on April 28, 2026, and the meeting lasted approximately 45 minutes. In attendance where Plaintiff's counsel, Terri Keyser-Cooper and Luke Busby, myself, and two other Reno Deputy City Attorneys, Holly Parker and Adam Cate.

7. Although City felt the requests were irrelevant and grossly disproportionate to the municipal liability claim given that only 16 of the 168 arrests were made before Mr. Killinger's incident, we were willing to consider producing all 168 reports as a compromise if they could be located without undue burden. The arrest reports were burdensome to locate because the only information Plaintiff received from the Peppermill in response to his subpoena was a spreadsheet

**Reno City Attorney**
**P.O. Box 1900**
**Reno, NV 89505**

containing the date and time of the arrest and the suspects' initials for the 168 arrests. Peppermill refused to provide the full names of the suspects citing privacy concerns.

8. I then proposed that Ms. Keyser-Cooper ask the Peppermill (through its counsel, Kent Robison, Esq.) to simply provide us with the RPD case number associated with each arrest, which would enable our staff to easily retrieve the arrest reports by searching for the case number. During the phone call, Ms. Terri Keyer-Cooper indicated that would be a good idea and she would give it some thought.

9. Two days later, on April 30, 2026, Ms. Keyer-Cooper sent me a letter in which she stated, "you cannot insist that the Peppermill must supply names and disregard the privacy rights of the individuals involved…" If requested by the Court, I can provide a copy of this letter.

10. On May 1, 2026, I sent an email to Ms. Keyser-Cooper explaining that I am not asking the Peppermill to disclose the *names* of the arrestees. I am simply requesting that she ask Peppermill to provide the RPD case numbers associated with each of the arrests in response to her subpoena for purposes of facilitating our search for the requested arrest reports.

11. In response to my May 1st email, Ms. Keyser-Cooper against stated, "I am not going to ask the Peppermill to violate the privacy of these individuals…"

12. In response, I told Ms. Keyser-Cooper, "If the Peppermill would like us to, we can redact the names of the individuals after locating the reports with the RPD case numbers before they are disclosed to you. That should give the Peppermill additional assurance that the privacy of these individuals will be protected." In response, Ms. Keyser-Cooper stated she would be having more discussions with Mr. Robison, but she never did provide my office with any of the RPD case numbers to help reduce City's burden of hunting for records using only dates and initials. I can provide a copy of the May 1st email exchange if requested by the Court.

13. Although City still disputes the relevance and proportional need for the records, for the sake of transparency and demonstrating to Plaintiff that there have not been 168 "mistaken" arrests based on FRS, I instructed my assistant and other City staff to pull every trespass arrest report for the dates given and compare them to the initials provided by the Peppermill to locate the requested records. This task took several weeks to complete given other work they had to complete.

**Reno City Attorney**
**P.O. Box 1900**
**Reno, NV 89505**

14. Because City agrees with Ms. Keyser-Cooper that the privacy interests of the arrestee are entitled to protection, my office redacted the names and PII of the arrestees prior to producing more than 1,000 pages of records to Plaintiff on June 15, 2026. Based on my extensive meet-and-confer discussions with Plaintiff's counsel, it was my understanding that this was what the parties had expected and agreed upon, because Ms. Keyser-Cooper repeatedly insisted that the names of the arrestees must not be disclosed. I did not "unilaterally" decide to make the PII redactions, as Plaintiff now claims.

15. Plaintiff made no complaints about the redacted records produced on June 15th until after expert reports were exchanged on August 3, 2026. On August 4th, Ms. Keyser-Cooper requested yet another telephonic meet-and-confer conference with me, during which she requested City now produce unredacted copies of the Arrest Reports, insisting that such information is necessary for the municipal liability claim because she needs to contact these people to find out if "what happened to Killinger also happened to them." Mr. Luke Busby did not attend or participate in this conference.

16. During August 4th telephone conference, I again reiterated that the records are not relevant to the municipal liability claim, and that is when Ms. Keyser-Cooper stated, "they are public records and so I'm entitled to unredacted copies." At that point, I felt Ms. Keyser was suggesting that she could just file a public records request, which would circumvent the relevance and proportionality requirements of FRCP 34. I did not want to invite a public records request by denying her request under FRCP 34, so I told Ms. Keyser-Cooper I would further research the issue before making a final decision on her request.

17. After completing my research, on August 6th, I sent an email to Ms. Keyer-Cooper with supporting legal authority confirming that the Nevada Public Records Act does not require production of PII in response to a public records request, and that such information should appropriately be redacted prior to disclosing the requested documents. *Las Vegas Rev.-J., Inc. v. Las Vegas Metro. Police Dep't*, 139 Nev. 69, 526 P.3d 724 (2023). I again reiterated that the information Plaintiff seeks is irrelevant to the municipal liability claim because even if one or more of these individuals were to now claim that they were "mistakenly" arrested after being contacted

Reno City Attorney
P.O. Box 1900
Reno, NV 89505

by Plaintiff's counsel, it still does not change the fact that these individuals never came forward with such allegations before Killinger's arrest, and thus, City had no prior notice of any "mistaken" arrests based on FRS at the time of Killinger's arrest that could possibly establish a pattern or practice of "allowing" such mistaken arrests. Nor would such newly discovered evidence have put RPD on notice, prior to September 17, 2023, of a need to train its officers on use of facial recognition technology to avoid mistaken arrests. I can provide a copy of this email if requested by the Court.

18. In response, Ms. Keyser-Cooper asked if I felt another meet-and-confer would be helpful. I responded that absent any legal authority to contradict the case law I provided, I did not believe a further meet-and-confer would be fruitful.

19. In a subsequent email on August 7th, I advised Ms. Keyser-Cooper, "If you have read each and every report we produced, you will see that not a single one of them (except Killinger) contained any allegation of mistaken identification. If you can point to an arrest report where the suspect claims that he or she was mistakenly identified or was not who the Peppermill thought they were, please provide me with the bates number, and I will go look at that report and reconsider whether the identity of that individual should be disclosed. I would also note that only 16 of those arrests occurred before 9/17/2023." I can provide a copy of this email if requested by the Court.

20. Neither Ms. Keyer-Cooper nor Mr. Busby identified any legal authority or arrest record for my further review or consideration prior to filing the instant Motion Regarding Discovery Dispute (ECF No. 82).

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

Executed on this 14th day of August, 2026, in Reno, Washoe County, Nevada.

By [signature]
ALICE K. HERBOLSHEIMER, ESQ.
Nevada Bar No. 6389

Reno City Attorney
P.O. Box 1900
Reno, NV 89505