TERRI KEYSER-COOPER No. 3984
Law Office of Terri Keyser-Cooper
125 Edgewater Parkway
Reno, NV 89519
775-337-0323
keysercooper@gmail.com
Luke Busby, Esq.
Nevada State Bar #10319
316 California Avenue
Reno, Nevada 89509
(775) 453-0112
luke@lukeandrewbusbyltd.com
*Attorneys for Plaintiff Jason Killinger*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JASON KILLINGER,

v.

RENO POLICE OFFICER R. JAGER and CITY OF RENO,

Defendants.
___________________________________/

Case No3:25-cv-00388-MMD-CSD

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION REGARDING DISCOVERY DISPUTE (ECF NO. 85)**

## I. STATEMENT OF UNRESOLVED ISSUE

Plaintiff agrees with Defendants' statement of unresolved issue.

## II. SUMMARY OF PLAINTIFF'S POSITION

Defendants seek to independently measure Plaintiff's height because they do not believe Reno's Renown Hospital has measured Plaintiff's height correctly even though Renown has measured him four times in the past six years consistently at 6' or 6'1" and two hospitals in Idaho, for the preceding 14 years, have also consistently measured Plaintiff at 6' or 6'1." Defendants have presented no evidence that these Reno and Idaho hospitals have measured him incorrectly.

Plaintiff has been employed by UPS as a commercial long haul interstate driver for more

than 20 years. As a condition of employment, he is required by the U.S. Department of Transportation to have a complete physical examination every two years; if he misses the appointed time by even one day, he cannot work. The examination always includes his height. Since 2020 Plaintiff's physical examinations have been conducted by Renown, the largest and most highly respected hospital in Northern Nevada. Renown has consistently measured Plaintiff Killinger at 6' or 6'1." **Defendants have these records.** Prior to arriving in Reno, from 2006 to 2020, Killinger worked for UPS in Idaho for 14 years; his height was measured at Community Care Hospital in Rexburg, Idaho and St. Luke's Hospital in Twin Falls. The measurements by Renown, Community Care, and St. Luke's Hospital are all the same—Plaintiff's height has consistently measured at either 6' or 6'1." Plaintiff has offered to provide a Release to Defendants so permit Defendants may obtain their own copies of the Idaho medical records. Defendants have refused.

### A. The Relevant Law

Rule 35 requires a showing that the party's mental or physical condition is "in controversy" and that there is "good cause" supporting the examination. *Schlagenhauf v. Holder,* 379 U.S. 104, 114,117 (1964). Federal Rule of Civil Procedure 26(b)(2)(C)(i) states, "Courts must limit the frequency or extent of discovery if the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Here Plaintiff's height has been measured more than 10 times in the past 20 years by reputable hospitals. Defendants have the Renown records and easily, with Plaintiff's full cooperation, could obtain the Idaho records, but instead burden the Court with a frivolous motion without good cause when Plaintiff's height is not in controversy.

### B. Defendants' Motion Lacks Good Cause As Plaintiff's Height Is Not In Controversy

Killinger's Complaint states six causes of action: 1) false arrest; 2) fabrication of evidence;

3) judicial deception; 4) excessive force; 5) malicious prosecution, and 6) municipal liability. Killinger's height is not relevant to any claim or to damages. In order to resolve this dispute, Plaintiff's counsel has provided Defendants with 8 x10 color still photos taken from Jager's BWC which show Plaintiff in the process of being measured by Jager and his height exceeding 5'9."

**C. Defendants' Motion Incorrectly States the Relevant Facts**

Plaintiff, a "valued customer" of the Peppermill with a gold player's card was wrongly identified by the Peppermill's facial recognition technology ("FRT") in 2023 as prior trespasser Michael Ellis. The Peppermill admits its FRT was in error. Jager admits he would not have arrested Plaintiff if RPD had trained him on FRT. Jager admits Killinger's arrest was wrongful, testifying: "he took a completely innocent man to jail, a man who violated no law, and was wrongfully arrested." (Jager depo, 42:3-9). It was widely known within the police industry prior to 2017 that FRT can be inaccurate, must only be used as an investigative lead, and insufficient as proof of identity or probable cause. Jager testified he received no training on FRT prior to Killinger's arrest and did not know that arrests must not be made based solely on FRT. Jager admits that for years he arrested people using FRT alone for identifications as it was RPD's custom and practice, and his understanding, that all officers did the same, all officers accepted the Peppermill's FRT's results as proof positive of identification automatically rejecting any evidence to the contrary as fake.

Jager testified if he had received FRT training before arresting Plaintiff, he would not have arrested him; he would have conducted a thorough investigation. He would have looked at all of Killinger's multiple forms of identification, which at the time he refused to do. Jager admitted he was wrong to rely solely on FRT to makes arrests. Former Chief Nance, as well as Jager, and RPD Sgts Desantis and Hodges, RPD detective Sheahan, and RPD investigator Kosinski have all testified that even if Killinger had a face that resembled Ellis, that did not make him guilty of anything.

Peppermill security director Dean Hill testified that FRT produces false positives ten percent of the time and he agrees a facial resemblance is insufficient cause to arrest. (See Hill depo, 54:10). That is what this case is about. Killinger's height is not relevant to any claim whatsoever.

**1. <u>No Conflicting Evidence As Defendants' Claim</u>**

It is undisputed Killinger's height was never measured by the jail. The jail records mixed Killinger up with Ellis. The jail records incorrectly list Killinger's birthday as 1/1/1980 when it is 7/28/1983; state his hair is brown when it is blonde; his eyes are hazel when they are blue; his height as 5'10" when it is 6'1." It is undisputed that for the past 20 years Killinger's height has been accurately measured by three well respected, accredited hospitals. Defendants have produced no evidence that Renown or the two Idaho hospitals have incorrectly measured his height. Jager measured Plaintiff's height in the Peppermill security office against a plastic height chart affixed to the wall. Such charts must be accurately placed on the wall, if they are placed too high or too low the measurement will be incorrect. Jager's BWC reveals Plaintiff's height was measured as he stood about six inches **<u>away</u>** from the wall chart, **<u>facing</u>** the chart, instead of with his back against the chart as customary when height is measured. Jager's BWC plainly show Killinger's height exceeding 5'9."

**2. <u>Defendants' Seek To Create Jury Confusion</u>**

Jager checked with RPD and determined Plaintiff's license was valid and Plaintiff had no prior arrests, wants, warrants, or criminal history. Jager compared Plaintiff's license to Ellis' license. Jager noticed **<u>huge differences</u>** between the licenses. Plaintiff had a Class A **<u>commercial</u>** driver's license with unique endorsements allowing him to tow propane tankers and triple trailers; Ellis had a Class C license without endorsements. Plaintiff's height was 6'1"; Ellis' height was 5'9." Plaintiff's weight was 285; Ellis' weight was 235. Plaintiff's eyes were blue; Ellis' eyes were

hazel. Plaintiff's birthday was in July of 1983; Ellis' birthday was in October of 1976. Both licenses had different addresses and license numbers. These license differences **negated** any probable cause to believe Killinger was Ellis. Killinger also offered to produce other identification to prove his identity, but Jager refused to look at it. Jager wanted Killinger to be Ellis to legitimize his arrest. Jager reasoned if Killinger were actually Ellis, the FRT was accurate and an arrest would be proper. Jager measured Killinger, having him face the height chart, inches away from the height chart, and proclaimed Killinger was 5'9." Jager believed that if Killinger measured 5'9," Ellis' height, that proved he was actually Ellis. Jager convinced himself if Killinger measured 5'9," then he could ignore the differences between the two men and arrest Killinger as Ellis.

Defendant insist Killinger must be measured with his shoes off. This will create jury confusion. The parties have reviewed the videotape of Killinger at the Peppermill in the security office before Jager's arrival. Killinger is never told to remove his shoes. The parties have reviewed Jager's BWC after his Peppermill arrival. Killinger is never told to remove his shoes. His shoes were never off at the Peppermill. His shoes were never off when he was measured for his physical examinations at the hospitals. Having a new height measurement with shoes off, would create jury confusion. The jury could easily be confused as to which measurements were with shoes on and which with shoes off. There is no need for such confusion. Killinger always wore his shoes, a flat soled tennis shoe, and there is no proof to the contrary.

## III. PLAINTIFF'S REQUESTED COMPROMISE

Should the Court agree to allow a new height measurement, Killinger requests his height be measured only with his shoes on to avoid potential jury confusion and that he be measured at Northern Nevada Medical Center in Sparks which is more similarly situated to Renown, and not "Silver State Medical Consultants," which is a private company furnishing expert consultations.

DATED this 8th day of September 2026 /s/ Terri Keyser-Cooper

# CERTIFICATE OF SERVICE

I, Terri Keyser-Cooper, declare as follows:

On this date, I served a copy of the following documents on the parties as follows:

PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF RENO'S MOTION REGARDING DISCOVERY DISPUTE ECF NO. 85

[ ] BY FED EX. By placing a true copy of the above-referenced document(s) with FedEx in a sealed envelope with postage prepaid to the addressee(s) listed below.

[ ] BY FACSIMILE TRANSMISSION. By transmitting a true copy of the document(s) by facsimile transmission

[ ] BY HAND-DELIVERY. By delivering a true copy enclosed in a sealed envelope to the address(es) shown below.

[X] BY ELECTRONIC SERVICE. By electronically mailing a true copy of the document(s) to defendants at the following email addresses via the Court's electronic filing procedure:

ALICE K. HERBOLSHEIMER
ADAM CATE
JENNY SPARKS
HOLLY PARKER
Reno City Attorney's Office
P.O. Box 1900
Reno, NV 89505
Herbolsheimera@reno.go

DATED this 8th day of September, 2026

_/s/ Terri Keyser-Cooper
TERRI KEYSER-COOPER
*Attorney for Plaintiff Jason Killinger*